UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

UNITED STATES OF AMERICA,

vs.  Case No. 1:CR-00-80-002

ERIC PRESTON,

    Defendant.

_____/

**MOTION TO MODIFY THE TERM OF IMPRISONMENT
PURSUANT TO TITLE 18 U.S.C. §3582(c)(2)**

    COMES NOW, Defendant Eric Preston (hereinafter referred to as "Defendant"), proceeding pro se, and hereby files this Motion To Modify The Term Of Imprisonment Pursuant To Title 18 U.S.C. §3582(c)(2), and says:

**INTRODUCTION**

    As of November 1, 2007, new rules apply for determining the base offense level in cocaine base cases (commonly known as "crack") under §2D1.1 of the advisory sentencing guidelines. On December 11, 2007, the Sentencing Commission voted to give retroactive effect as of March 3, 2008, to the amendment to the crack guideline, and also voted to amend §1B1.10 in ways that authorize district courts to reduce defendant's sentences by at least two levels from their particular guideline range.

This motion asks the court to apply retroactive Amendment 706 to Defendant's sentence, granting a two-level reduction from his correctly calculated guideline range, for a new term of imprisonment of not more than 110 months, a 27 month reduction from his current sentence of 137 months. The facts and memorandum of law outlined below will show that in light of the factors articulated in Title 18 U.S.C. §3553(a), and the advisory nature of the Sentencing Guidelines, Defendant is eligible for the two-level reduction under Amendment 706 and this Court has authority to render a sentence in this case that it finds just and reasonable.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

1. In June of 1999, Defendant was named in an Indictment in the Middle District of Pennsylvania which charged in pertinent part: Possession with Intent to Distribute In Excess Of 5 Gram Of Crack Cocaine, in violation of Title 21 U.S.C. §841(a)(1).

2. On November 7, 2000, after entering into a written plea agreement, Defendant proceeded to sentencing. At the hearing, the Presentence Report ("PSR") determined that based on a total offense level of 31 and a criminal history category of VI, the guideline range was 188-235 months. However, the Court departed below the applicable guideline range and sentenced Defendant to 137 months imprisonment, to be followed by a 5-year term of supervised release. [Note: Defendant presumes he was sentenced in the middle of Level 26, History Category VI, 120-150 months. Defendant asks the Court to use this range as the starting point for the two-level departure.]

## JURISDICTION

This Court has subject matter jurisdiction over this petition pursuant to Title 18 U.S.C. §3582(c)(2), which provides in pertinent part:

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. §994(o), upon motion of the defendant, the director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

See Title 18, United States Code, Section 3582(c)(2).

Title 28 U.S.C. §994(o) requires the Commission to "periodically review and revise...the guidelines." The Commission's policy statement on retroactivity is found at United States Sentencing Guideline (USSG) §1B1.10, and the amendments the Commission intends to have retroactive effect are listed in §1B1.10(c).

## SUMMARY OF THE ARGUMENT

Defendant's eligibility for a two-level reduction under Sentencing Guideline Amendment 706, as well as this Court's authority to issue a non-guideline sentence (departing greater than the two levels advised by the Sentencing Commission) in light of the advisory nature of the Sentencing Guidelines, are the subjects of this petition. Although the changes to §1B1.10 could be interpreted to deny or reduce two-level reductions, Defendant asserts that this amended commentary is advisory and the Court maintains its own discretion in this matter for at least three primary reasons:

First, the amended commentary limits the sentencing court's ability to consider the §3553(a) factors in imposing a new sentence, in violation of the court's duty under §3582(c)(2). Second, it instructs courts to treat §1B1.10 as

mandatory - which in turn makes §2D1.1 mandatory in the context of a §3582(c)(2) re-sentencing - in violation of <u>Booker</u> and <u>Kimbrough</u>. And third, it violates the Commission's own statutory obligations under its enabling statutes, 28 U.S.C. §§991 and 994.

Also, Defendant will argue that the variable factors under §3553(a) - namely his post-sentence rehabilitation and the recent Supreme Court decisions regarding the cocaine powder/cocaine base ratio - make Defendant's request appropriate to produce a term of imprisonment "sufficient but not greater than necessary to accomplish the goals of sentencing."

## ARGUMENT AND CITATIONS OF AUTHORITY

**THE TWO-LEVEL SENTENCE REDUCTION.**

Sentencing Guideline Amendment 706 authorizes at least a two-level reduction from a defendant's base offense level for crack cocaine offenses. In this case, Defendant was found accountable for approximately 22 grams of cocaine base. Pursuant to the **former** §2D1.1, Defendant's base offense level was 28 for offenses involving this amount of cocaine base. With a criminal history category of VI, and other sentencing adjustments, Defendant was sentenced (presumably) to Level 26, for a guideline range of 120-150 months.

However, in light of Sentencing Guideline Amendment 706, and the new §2D1.1 Drug Quantity Table, Defendant's applicable Base Offense Level should now be Level 26. With a Criminal History Category VI, and the additional sentencing factors described above, as well as the variable §3553(a) factors outlined below, Defendant requests a two-level reduction (Level 24, Category VI, 100-125 months) for a sentence of not more than 110 months.

AUTHORITY TO IMPOSE A NON-GUIDELINE SENTENCE.

The Sentencing Commission has made revisions to §1B1.10 which on their face could be taken to limit the Court's ability to reduce Defendant's sentence by more than two levels or to depart from statutory required sentences, such as mandatory minimums or career criminal enhancements. However, these purported limitations raise several questions, the first being the extent to which the Commission can limit a court's sentencing discretion under §3582(c)(2).

Taken together, revised §§1B1.10(b)(1) and (b)(2) state that the court "shall not" reduce the defendant's term of imprisonment to a term that is less than the minimum of the recalculated guideline range, which can only be determined by substituting the amended guideline for the prior version and leaving all other guideline decisions the same as before. However, for the reasons outlined below, this amended commentary is not binding upon the Court and a non-guideline sentence can be issued in this case:

1. **Treating Amended §§1B1.10 and 2D1.1 As Mandatory Violates §3582(c)(2).**

The first problem with the changes to §1B1.10 is that they are designed to limit a court's ability to resentence a crack defendant in accord with the applicable §3553(a) factors, thereby requiring the court to violate its obligations under §3582(c)(2) to "consider the factors set forth in §3553(a) to the extent they are applicable" when reducing the sentence. In particular, amended §1B1.10 would require the district court to grant, at most, a two level reduction in every case if the resulting sentence would still be greater than necessary to serve the purposes of sentencing or create unwarranted disparity or otherwise contradict an applicable §3553(a) factor.

Because the amended guideline can still result in sentences that are based on an unwarranted disparity (see Crack Cocaine Treatment Ratio, below)

5

and fail to serve the purposes of sentencing, a district court cannot automatically assume – as the Commission would have it – that a sentence under the amended guideline satisfies §3553(a). And because the court has a statutory obligation to consider the applicable §3553(a) factors when imposing a new sentence under §3582(c)(2), the Commission's policy statement to the contrary is invalid. Stinson v. United States, 508 U.S. at 38 (2007).

### 2. Treating Amended §§1B1.10 and 2D1.1 As Mandatory Violates Booker And Kimbrough.

Even if the crack amendment did resolve the §3553(a) problems with the crack guideline (which it clearly did not), revised §1B1.10 would still violate Booker insofar as it renders any part of the guidelines mandatory. Booker made clear that the right to have a jury find facts that are essential to the punishment "is implicated **whenever** a judge seeks to impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant." Id. at 232. Many of the defendants (as here) who will be resentenced under §3582(c)(2) were initially sentenced on the basis of facts that were neither found by the jury nor admitted by the defendant. Requiring a court to impose a new sentence based on facts that were initially found in violation of the Sixth Amendment would import that Sixth Amendment violation into the new sentence.

Booker also made clear that the Guidelines cannot be applied as mandatory in some circumstances and not in others. The Booker Court rejected the Government's suggestion that it "render the Guidelines as advisory in any case in which the Constitution prohibits judicial factfinding" but "leave them as binding in other cases...[W]e do not see how it is possible to leave the Guidelines as binding in other cases. For one thing, the Government's proposal would impose mandatory Guidelines-type limits upon a judge's ability to **reduce** sentences, but it would not impose those limits upon a judge's ability to

6

increase sentences. We do not believe that such one-way levers are compatible with Congress' intent." Booker, 543 U.S. at 266.

Again in Kimbrough, the Court rejected the Government's argument that §2D1.1 and, more specifically, the crack guideline, can be interpreted in any way that renders it effectively mandatory: "[U]nder Booker, the cocaine Guidelines, like all other Guidelines, are advisory only; and ... the Court of Appeals erred in holding the crack/powder disparity effectively mandatory." Id. at 5.

Those portions of amended §1B1.10 that "would impose a mandatory Guidelines-type limits upon a judge's ability to reduce sentences" and would render §2D1.1 "effectively mandatory" for crack defendants being resentenced under §3582(c)(2) violate Booker and Kimbrough and are void as a matter of law. See Neal v. United States, 516 U.S. at 290, 295 (Commission "does not have the authority to [effectively] amend [a] statute" by "interpreting" it in ways contrary to the construction given it by the Supreme Court and the Court will "reject [the Commission's] alleged contrary interpretation"); Stinson, 508 U.S. at 38 ("commentary in the Guidelines Manual that interprets or explains a Guideline is authoritative **unless it violated the Constitution**")(emphasis added); United States v. Hicks, 472 F.3d at 1172-73 ("to the extent that policy statements are inconsistent with Booker by requiring that the Guidelines be treated as mandatory, the policy statement must give way").

Furthermore, requiring the guidelines to be treated as advisory in a §3582(c)(2) resentencing does not run afoul of cases holding that Booker is not retroactive. The limitations on giving retroactive effective to new constitutional rules were designed to protect the system's interest in finality. See, e.g., Teague v. Lane, 489 U.S. 288, 309 (1989)("Application of

7

constitutional rules not in existence at the time a conviction became final seriously undermined the principle of finality which is essential to the operation of our criminal justice system.").

In contrast, a §3582(c)(2) proceeding renders the judgment no longer final for the limited purpose of imposing a reduced sentence. See 18 U.S.C. §3582(b) ("Notwithstanding the fact that a sentence to imprisonment can subsequently be modified pursuant to the provision of subsection (c) ... a judgment of conviction that includes such a sentence constitutes a final judgment for all **other** purposes") (emphasis added). Put another way, a judgment of conviction does **not** constitute a final judgment for purposes of modifying the sentence pursuant to §3582(c)(2) and thus the finality concerns against applying Booker retroactively do not exist in that limited context. See also United States v. Goines, 357 F.3d 469, 478 (4th Cir. 2004)("the disruption of finality engendered by a broad interpretation of §3582(c)(2) is consistent with the legislative design," which anticipates that sentences will reopen whenever a guideline amendment is given retroactive effect).

### 3. The Revisions To §1B1.10 Violate The Commission's Statutory Obligations Under Its Enabling Statute.

The third problem with revised §1B1.10 is that it violates the Commission's obligations under its enabling statute. The Commission has already acknowledged that the crack amendment represents only a modest interim measure that does not fully rectify the problems with crack sentences, including that they "fail[] to meet the sentencing objectives set forth by Congress" in §3582(c)(2). In revising §1B1.10 to restrict a court's ability to even consider this acknowledged failure of the guideline **as amended** to satisfy §3553(a) when imposing a new sentence under §3582(c)(2), the Commission has violated its obligation under 28 U.S.C. §994(a)(2) to write policy statements

8

that "further the purposes set forth in section 3553(a)(2)." See 28 U.S.C. §994(a)(2).

The Commission has also violated its obligation to establish sentencing policies and practices that assure that the purposes of §3553(a)(2) are met, avoid unwarranted sentencing disparities, maintain sufficient flexibility to permit individualized sentences, and reflect advancement in the knowledge of human behavior as it relates to the criminal justice process. 28 U.S.C. §991(b)(1)(A)-(C). If guideline commentary "is at odds with" the plain language of 28 U.S..C. §994, the guideline commentary "must give way." United States v. LaBonte, 520 U.S. 751, 757 (1997). The amendments are thus void as an improper exercise of Commission authority, in addition to violating the remedial holding in Booker, and should be rejected.

To the extent that revised §1B1.10 purports to interpret §3582(c)(2), it is also void under Stinson, which rejected the notion that policy statements and other commentary should be viewed as construing the statutes the Commission administers. Instead, Stinson held that "the functional purpose of commentary (of the kind at issue here) is to assist in the interpretation and application of" the guidelines. Id. at 45. In contrast, the interpretation of §3582(c)(2), which in turn violated separation of powers principles because it is a judicial function to interpret and apply laws.

**FACTORS TO CONSIDER UNDER §3553(a).**

In addition to the issues outlined above, Defendant presents the following factors for consideration in determining a sentence in this case that is appropriate and reasonable:

### 1. The Crack Cocaine Treatment Ratio.

The crack guideline's §3553(a)-related problems are well known and well documented. In Kimbrough, the Supreme Court identified three major issues associated with the differential treatment of crack and powder cocaine offenders, which under the old guideline "yield[ed] sentences for crack offenses three to six times longer than those for powder offenses involving equal amounts of drugs": (1) the disparity was based on "assumptions about the relative harmfulness of the two drugs" that "more recent research and data no longer support;" (2) the disparity "leads to the anomalous result that retail crack detailers get longer sentences than the wholesale drug distributors who supply them with powder cocaine from which their crack is produced," and thus "is inconsistent with" congressional policy to punish major drug dealers more severely than low-level dealers;" and (3) the disparity "fosters disrespect for and lack of confidence in the criminal justice system because of a widely-held perception that it promotes unwarranted disparity based on race." The Court also cited the Commission's own conclusions that this disparate treatment of crack offenders was "generally unwarranted" and "fail[ed] to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act." Kimbrough, at 568.

Importantly, the amended guideline does **not** fully rectify these problems. Quoting the Commission, the Supreme Court wrote that the "modest amendment [still] yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder," and the Commission had recommended that the ratio be "substantially reduced." It also noted that the Commission has described the amendments as "only...a partial remedy for the problems generated by the crack/powder disparity." And the Court found that "[t]he amended Guidelines still produce sentencing ranges keyed to the

mandatory minimums in the 1986 Act," which was the source of the problems associated with the crack guideline in the first place. The guideline as amended "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1," and the Commission has recommended a ratio of, at most, 20 to 1. Kimbrough, 128 S.Ct. at 569.

### 2. Rehabilitation And Personal Circumstances.

Lastly, to further satisfy the parsimony provisions of 18 U.S.C. §3553(a) (requiring a sentence "sufficient but not greater than necessary" to comply with the purposes of sentencing outlined in the statute), Defendant presents his post-sentence rehabilitative efforts and personal circumstances for the Court's additional consideration:

During Defendant's entire incarceration, he has worked tirelessly to improve himself personally and vocationally to ensure that his reentry into society will be smooth and successful. To that end, Defendant has participated in numerous BOP sponsored programs, including, but not limited to, Health and Fitness Courses such as Aerobics Class, Total Wellness Class, Cross Training Class, Circuit Training Class, and Fitness Endurance Class; also Drug Abuse Education Class (40 Hours), Gang-Involvement/Anti-Violence, Developing Insight, Career Counseling Class, Returning Home Class, Resume Preparation, Basic Lanscaping Course, Commercial Driver's License Class Program, Basic Building and Maintenance, and the AA/NA Group. In addition, Defendant most notable accomplishment is his completion of the Residential (500 Hour) Drug Abuse Program at FCI Marianna, Florida. [Note: Defendant did not receive the customary one year sentence reduction for his completion of the 500 Hour Drug Program. Nevertheless, he took the course solely for personal improvement.] (See Certificates, attached). Defendant has also engaged in

extensive self-teaching, diligently studying with the National Federation of Personal Trainers.

Upon his release, Defendant will work in the landscaping industry and as a personal trainer. His long-term goal is to own a landscaping company with the assistance of friends and family. Defendant will continue with formal schooling upon his release, in order to thoroughly master his craft. Defendant will also take advantage of the Federal Bonding Program.

Defendant plans to live with his family in Fort Myers, Florida, where he will reside in a low-crime neighborhood, far away from his former associates. Defendant is the proud father of three children and his overwhelming desire is to be returned to his family and to lead an honest, law abiding life.

Defendant's parents reside in Fort Myers. He has two brothers, three sisters, and a large network of friends and extended family. Everyone is greatly anticipating Defendant's return to society and the entire family applauds his rehabilitative efforts and believes in his sincerity. Defendant's plans for the future are solid and he is prepared to demonstrate hard work and perseverance in order to guarantee a successful future.

## CONCLUSION

In sum, Defendant is a young man serving a significant prison sentence for a relatively small amount of cocaine base. Despite the burden of a large sentence, and the overwhelmingly negative prison environment, Defendant has forged forward and continued to rehabilitate himself, and in the process acquired viable skills which will provide gainful employment. Defendant now suggests to the Court that in light of Sentencing Guideline Amendment 706, and the variable factors outlined above under §3553(a), a two-level

departure, resulting in a sentence of not more than 110 months, is "sufficient but not greater than necessary to accomplish the goals of sentencing" in this case.

As an alternative, Defendant asks the Court to schedule a new sentencing hearing, order a supplemental Presentence Report, and resentence him as allowed by Section 3582(c)(2), applying Booker and Kimbrough to his resentencing.

Wherefore, for the reasons stated above, Defendant prays this Honorable Court will grant this petition and/or any other relief that the Court deems appropriate in this matter.

Respectfully Submitted,

*Eric Preston*

Eric Preston
Reg. No. 10048-067
FCC Coleman-Medium
P.O. Box 1032
Coleman, Florida 33521-1032

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was furnished via first class U.S. mail with pre-paid postage on this 28th day of April, 2008, to the following:

Mr. Eric Pfisterer
Assistant United States Attorney
P.O. Box 11754
Room 218, Federal Building
Harrisburg, Pennsylvania 17108

*Eric Preston*

Eric Preston